**IT IS ORDERED as set forth below:**

Date: November 18, 2010

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | * | Case No. 10-94174 WLH |
| | * | (Jointly administered with Case |
| | * | No.10-94166 WLH) |
| INNOVATIVE CANDY CONCEPTS, LLC, | * | |
| | * | Chapter 11 |
| | * | |
| and | * | |
| | * | |
| THE HAMMER CORPORATION, | * | |
| | * | |
| Debtors. | * | |
| _____ | * | |

### INTERIM ORDER AUTHORIZING POST-PETITION FINANCING AND NOTICE OF FINAL HEARING REGARDING POST-PETITION FINANCING

THIS MATTER, having come before the undersigned upon the motion of Innovative Candy Concepts, LLC and The Hammer Corporation (the "Debtors") for approval of post-petition financing of the Debtors by LSQ Funding Group, L.C. ("Secured Party") and the granting of security interests under Section 364 of the

349530-1

Bankruptcy Code (the "Motion"), and it appearing that the immediate entry of this Order is essential to the continued orderly operation of the Debtors' business and is in the best interest of the Debtors and the Debtors' estate, the following findings of fact are made by the Court:

**I. FINDINGS OF FACT**

1. On November 12, 2010 (the "Petition Date") the Debtors filed their voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

2. The Debtors and Secured Party represent they are parties to the Factoring and Security Agreement dated June 24, 2004, Amendments to the Factoring and Security Agreement dated January 1, 2009, January 14, 2010, June 18, 2010, and the Inventory Loan Agreement dated May 04, 2006 (collectively, the "Pre-Petition Agreement"), copies of which are annexed to the Motion as Exhibit A, pursuant to which the Debtors allege they sold their accounts to Secured Party and obtained working capital financing from the Secured Party.

3. The Pre-Petition Agreement provides for the purchase of accounts by the Secured Party at face value and advances by Secured Party to the Debtors based on Debtors' inventory, so long as such advances do not cause the ratio of the Debtors' obligations to Secured Party to the value (as determined in the Pre-Petition Agreement) of the Debtors' eligible (as determined in the Pre- Petition Agreement) inventory to exceed that set forth in the Pre-Petition Agreement (the "Formula").

4. As of the Petition Date, the Debtors represent it was indebted to the Secured Party in the amount of at least $1,681,317.31 (the "Pre-Petition Obligation") secured by the collateral described in the Pre- Petition Agreement.

5. The Debtors have offered to assign their accounts to Secured Party under the Pre-Petition Agreement and Secured Party has agreed to consider purchasing accounts from the Debtors pursuant thereto.

6. The Secured Party represents it has agreed to continue to provide working capital to the Debtors on Debtors' inventory in accordance with the Pre-Petition Agreement.

7. The Debtors, notwithstanding their efforts to do so, are unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. Section 364(c)(2) and (3), and the Debtors are unable to obtain credit on terms equal to or more favorable than those proposed by Secured Party.

8. Secured Party represents it has agreed to consider providing working capital to the Debtors in accordance with the Pre-Petition Agreement in good faith, within the meaning of 11 U.S.C. Section 364(e).

9. Good cause exists for approval of the Debtors' agreement to the financing by Secured Party under the terms of this Order, and the entry of this Order will minimize disruption of the Debtors as a "going concern" and is in the best interest of the Debtors, their creditors, and their estate. The terms upon which the Debtors are authorized to obtain cash advances are determined as fair under the circumstances.

10. The Debtors have provided written notice of the filing of the Motion and the Notice of Emergency Hearing to Secured Party, the United States Trustee, any Official Creditors' Committee appointed in this Case and its counsel, the twenty largest unsecured creditors of the Debtors, all of the Debtors' secured creditors, the Internal Revenue

349530-1

Service, and all parties who filed requests for notice as evidenced by the affidavit of service filed by the Debtors' counsel with this Court, which notice this Court finds to be appropriate and adequate under Federal Rules of Bankruptcy Procedure 2002 and 4001, and as required by Section 364 of the Bankruptcy Code.

11. The Debtors admit, without prejudice to the rights of an Official Committee of Unsecured Creditors, a trustee or other third party to challenge same, that as of the Petition Date, in accordance with the Pre-Petition Agreement, the Debtors were indebted to the Secured Party, without defense, counterclaim, recoupment or setoff, in the aggregate amount of at least the Pre-Petition Obligation secured by a valid, enforceable and properly perfected first priority lien in the collateral described therein. The obligations and indebtedness owed under the Pre-Petition Agreement are valid and indefeasible obligations of the Debtors and their estate, in accordance with their terms; and the liens and security interests in favor of Secured Party with respect to the Collateral are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law.

12. The post-petition financing authorized herein with Secured Party provides a vital source of working capital for the Debtors, is in the best interests of the Debtor and its estate, and is necessary to avoid immediate and irreparable harm.

**II. ORDER**

Based on the foregoing Findings, it is now therefore ORDERED as follows:

1. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Pre-Petition Agreement.

349530-1

2. The Debtors are authorized, effective immediately, to sell and assign their accounts to the Secured Party pursuant to Bankruptcy Code Section 363, pursuant to the terms of the Pre- Petition Agreement as limited herein, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder.

3. The Debtors are authorized to ratify, and are deemed to have so ratified, the Pre-Petition Agreement to the extent of any post-petition transactions undertaken hereunder.

4. The Debtors are authorized and empowered to sell and assign all of their accounts to the Secured Party pursuant to this Order and the Pre-Petition Agreement as limited herein until December 6, 2010. However, the Debtors may not spend more than one hundred thousand dollars ($100,000) per week in the ordinary course of its business. To the extent the sale of Debtors' accounts is insufficient to provide Debtors' one hundred thousand dollars ($100,000) per week, Debtors are authorized and empowered to incur secured indebtedness pursuant to the Inventory Loan Agreement. Debtors' use of the proceeds of such sale or indebtedness shall not affect the rights of Secured Party hereunder.

5. Pursuant to Section 364(c)(2) and 364(d)(1) of the Bankruptcy Code, the Debtors may grant to Secured Party a security interest in the Collateral as set forth in the Pre-Petition Agreement effective as of the date of the filing of the Bankruptcy Case ("Collateral") as collateral for all future obligations of the Debtors to Secured Party, including Secured Party's reasonable attorneys' fees and expenses incurred post-petition as provided in the Pre-Petition Agreement and reasonable attorneys' fees and expenses

incurred in connection with the negotiation and preparation of this Order, and participation in protecting the Secured Party's rights hereunder (the "Obligations"). The Debtors will not apply cash proceeds from inventory acquired by the Debtors in the post-petition period to reduce the Debtors' pre-petition obligation to Secured Party. The Secured Party's security interest shall be senior to the claim of any entity now or hereafter claiming an interest in the Collateral including its own. The Secured Party may but need not file an Initial Financing Statement under the Uniform Commercial Code to perfect its security interest in the Collateral.

6. In addition to the fees, costs, charges and expenses authorized under the Pre-Petition Agreement, the Debtors shall pay to the Secured Party, on demand, as applicable only to post-petition transactions, in accordance with this paragraph, without application to the Court, Secured Party's reasonable attorneys fees and other professional fees incurred post-petition as permitted under the Pre-Petition Agreement and Secured Party's reasonable attorneys fees and other professional fees arising from or related to the transactions contemplated herein, including without limitation the negotiating, closing, documenting, and obtaining Court approval thereof and the enforcement of Secured Party's rights against Debtors hereunder. Such fees may be paid after submission of the billing statements to the U.S. Trustee, unsecured creditors committee and no objections thereto within 14 days. If objections are made, Secured Party must apply to the Court.

7. The Obligations shall constitute a superpriority administrative expense claim, subject only to the Carve-Out as defined below, under Section 364(c)(1) of the Bankruptcy Code, which, if unpaid in the ordinary course of Debtors' business, shall be deemed allowed, and which shall have priority over any and all administrative expenses

of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code. "Carve-Out" shall mean one hundred thousand dollars ($100,000) of administrative expenses incurred by the Debtors for the professional fees and expenses of its counsel or other professionals and without prejudice to any right of any professional of any unsecured creditor's committee to seek a carve out.

8. For administrative convenience, Secured Party may record the pre-petition transactions and the post-petition transactions arising under the Pre-Petition Agreement in one account, but payments must be accounted for as described herein.

9. The liens granted to Secured Party herein are deemed validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on behalf of Secured Party, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event Secured Party does make such a filing or recordation, the Debtors shall execute all documents required by Secured Party to do so.

10. Nothing in the Pre-Petition Agreement, or in any of the documents executed in connection therewith or this Order, shall require Secured Party to purchase accounts from the Debtors, or to provide working capital to the Debtors, such being in the sole discretion of Secured Party.

11. Secured Party is hereby afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

12. The Debtors shall comply with all provisions of the Pre-Petition Agreement with respect to post-petition transactions.

13. To the extent that any provision of the Pre-Petition Agreement shall cause the Debtors to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by Secured Party.

14. The Debtors shall not grant to any party any interest in the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to Secured Party.

15. The entry of this Order and execution, delivery, and performance under the Pre-Petition Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of Secured Party at law, in equity or otherwise, including, but not limited to, any right of Secured Party to request and to obtain relief under the Bankruptcy Code.

16. The automatic stay provisions of 11 U.S.C. Section 362 are lifted and terminated to enable Secured Party to implement the provisions of this Order and otherwise thereby to permit Secured Party to demand and receive collections on account of the post-petition Accounts, and to apply those collections to the Obligations and to demand and receive collections on account of the pre-petition Accounts and to apply those collections to pre-petition obligations. Notwithstanding the foregoing, the Secured Party is not hereby granted relief from the automatic stay to enforce any remedies against the Debtors that may be afforded under the Pre-Petition Agreement or to collect Collateral other than Accounts. In the event a Default occurs under the terms of the Pre-Petition Agreement, Secured Party shall have a right to request an expedited hearing before this Court seeking such relief as may be deemed appropriate upon three days' notice to (i) counsel for the Debtors; (ii) counsel for any statutory committee appointed

herein or, alternatively, the twenty largest unsecured creditors; (iii) the Office of the U.S. Trustee; and (iv) the United States Attorneys Office.

17. The Debtors may not use any of Secured Party's "cash collateral" as such term is defined in the Bankruptcy Code. For the purposes of this Order, "cash collateral" shall not include funds advanced by the Secured Party to the Debtors. Accordingly any cash collateral heretofore received by the Debtors shall be immediately paid to Secured Party; and hereafter coming into the Debtors' possession shall be paid to Secured Party immediately upon the Debtors' receipt.

18. An event of default under this Order ("Default") shall include the following:

    a. The Debtors' failure to perform or comply with any of the terms, conditions, or covenants of this Order;

    b. The Debtors' failure to perform or comply with any of the terms, conditions, or covenants of the Pre-Petition Agreement as applied to the post-petition transactions;

    c. The termination of this Order by its own terms, operation of law or court order;

    d. The dismissal of this Bankruptcy Case;

    e. The appointment of a trustee under the Bankruptcy Code;

    f. The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code;

19. Upon the occurrence of a Default, Secured Party shall provide written notice of such Default to the Debtors and counsel for the Debtors. If the Default is a type that is

not curable, or is curable by the Debtors and the Debtors fail to cure the Default within 24 hours from the time of service of such notice of the Default:

>	a. The Debtors shall hold and segregate all Cash Collateral in trust for Secured Party and
>
>	b. Debtors will not object to Secured Party's request for an expedited hearing on a motion for immediate relief from the automatic stay under Section 362 within not less than two (2) Court days from the date of the Default, subject to the Court's calendar (the "Stay Relief Motion").

20. Notwithstanding anything to the contrary contained herein, the proceeds of any advance from Secured Party, shall not be used either: (a) in connection with the investigation, assertion, commencement, or continuation of any action or claim against Secured Party or (b) to object to or contest, or raise any defenses to the validity, perfection, priority, or enforceability of any rights or claims of the Secured Party.

21. This Order is without prejudice to Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable agreement or law, including without limitation to seek relief from the automatic stay and/or to seek adequate protection with respect to matters not covered by this Order, to seek an injunction, and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtors or their estate.

22. This Order is without prejudice to rights of a Trustee or committee of unsecured creditors or any party in interest to object to any provision hereof at the final hearing subject to rights of Secured Party under 364(e)).  **Final hearing will be held on December 6, 2010 at**

**2:00 p.m. in Courtroom 1403, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia.**

23. Notwithstanding any provision of this Order, Secured Party may not improve its pre-petition position by virtue of the post-petition transactions including, without limitation, deducting pre-petition sums due from the Purchase Price of Accounts, requiring the payment of pre-petition Reserve Shortfall or pre-petition fees, requiring repurchase of pre-petition Accounts, or enforcing the Release Provision of the Pre-Petition Agreement as to post-petition transactions.

**END OF DOCUMENT**

*Prepared and Presented by:*

**MACEY, WILENSKY, KESSLER & HENNINGS, LLC**

___/s/_____
Frank B. Wilensky, Georgia Bar No. 758700
Vania S. Allen, Georgia Bar No. 558756
230 Peachtree Street, N.W.
Suite 2700
Atlanta, Georgia 30303
(404) 584-1200—Telephone
(404) 681-4355—Fax
fwilensky@maceywilensky.com
vallen@maceywilensky.com

349530-1

<u>DISTRIBUTION LIST</u>

Frank B. Wilensky, Esq.
Vania S. Allen, Esq.
230 Peachtree Street, N.W.
Suite 2700
Atlanta, Georgia 30303

Vincent Restauri, Esq.
P.O. Box 1806
Cranberry Township, Pennsylvania 16066

Robert Zadek, Esq.
333 Market Street, 25th Floor
San Francisco, California 94105

David S. Weidenbaum, Esq.
75 Spring Street, S.W.
Suite 362
Atlanta, Georgia 30303

Ted W. Hight, III, Esq.
Thompson, O'Brien, Kemp & Nasuti, P.C.
40 Technology Parkway South
Suite 300
Norcross, GA  30092

349530-1